UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ALEJANDRO SANCHEZ DIAZ and ALEXIS RUIZ, individually and on behalf of all others similarly situated, </br></br> Plaintiffs, </br></br> vs. </br></br> CAROLINA QUARRIES, INC. and ROCK OF AGES CORPORATION, </br></br> Defendants. | COMPLAINT – CLASS ACTION </br> (LR 23.1) |

Plaintiffs, Alejandro Sanchez Diaz and Alexis Ruiz, through counsel, allege as follows:

## INTRODUCTION

1. This is an action seeking recovery of certain wages and overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq.* The named Plaintiffs bring individual claims, a collective action claim under the FLSA, and a putative class claim under the NCWHA. They also allege certain other state law claims.

## THE PARTIES

### A. Plaintiffs.

2. Plaintiff Alejandro Sanchez Diaz is a resident of Rowan County, North Carolina.

3. Plaintiff Alexis Ruiz is a resident of Rowan County, North Carolina.

4. Each Plaintiff has executed a consent to sue under 29 U.S.C. § 216(b) which is attached as **Exhibits 1** and **2**.

1

B. **Defendants.**

5. Defendant Carolina Quarries, Inc. ("Carolina Quarries") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Salisbury, North Carolina. It may be served with process through its registered agent, Carolina Quarries, Inc., c/o National Registered Agents, Inc., 160 Mine Lake Ct Ste 200, Raleigh, NC 27615; or, at its office address at 805 Harris Granite Road, Salisbury, NC 28146; or, c/o Rock of Ages Corporation, 560 Graniteville Road, Graniteville, VT 05654.

6. Defendant Rock of Ages Corporation ("Rock of Ages") is a corporation organized and existing under the laws of the State of Vermont, with its principal place of business in Barre, VT. It may be served with process through its office at 560 Graniteville Road, Graniteville, VT 05654; or c/o Swenson Granite Works, 369 North State Street Concord, NH 03301.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367 and 29 U.S.C. § 216(b).

8. This Court has personal jurisdiction over Defendants, since they conduct business in Rowan County, which is located within this District.

9. Venue is proper because a substantial part of the events giving rise to the claims occurred in this District and because the named Plaintiffs reside in Rowan County.

## FACTS

A. **Corporate Background.**

10. Rock of Ages was founded in 1885 and is an integrated granite quarrier and manufacturer whose principal products are granite blocks, the raw material of the granite industry which it sells to other manufacturers and transfers to its own manufacturing facilities, and

2

manufactured granite memorials used primarily in cemeteries. As of 2010, Rock of Ages owned and operated nine active quarry properties and five manufacturing and sawing facilities in North America, principally in Vermont, North Carolina, Pennsylvania and the Province of Quebec. The company sells granite blocks to granite manufacturers around the world. The quarries produce the highest combined volume of dimensional granite in North America.

11. Swenson Granite Company LLC is a Delaware limited liability company, headquartered in Concord, New Hampshire. It has engaged in quarrying and manufacturing granite since 1883. Its primary products are granite curbing for highway use and landscape products such as steps, pavers, posts and other products. As of 2010, it operated two active quarry properties and six manufacturing and saw plants and participates in the granite highway curbing and landscape segments of the market at both wholesale and retail.

12. In 1984, Swenson Granite Company, Inc. acquired majority control of Rock of Ages. In 1986, Rock of Ages became a wholly-owned subsidiary. In 1997, Rock of Ages completed an initial public offering. In 2010, it entered into a merger agreement with Swenson Granite Company, LLC and ceased to be a public company. As of 2010, Rock of Ages employed 230 people, according to public reports.

13. In or about September 2016, Polycor Inc., a Quebec-based natural stone producer, announced the acquisition of Swenson Granite and Rock of Ages. The merger resulted in the biggest marble and granite production group in North America. Polycor stated that more than 800 employees would now work in Polycor's divisions. Polycor stated that it now had 30 quarries and 12 factories in Canada and the United States. The Polycor website lists quarries in Rockwell, NC; Salisbury, NC; Jay, Maine; Woodbury, VT; Barre, VT; Bethel, VT; Concord, NH; Elverson, PA; Schuyler, VA; Marble City, OK; Marble Hill, GA; and Tate, GA.

14. Rock of Ages posts help-wanted ads to a website in which it describes the North Carolina quarries as part of its operations. As of October 1, 2018, for example, the company had a help-wanted posting for a heavy equipment mechanic to work at "Carolina Granite Quarries," listed as a "Department" of Rock of Ages, in Salisbury, NC, to go along with help-wanted postings for the Rock of Ages Manufacturing Division, in Barre, VT, the Swenson Granite Works, in Concord, NH, and for an opening at Pennsylvania Granite Quarries, in Elverson, PA.

**B. Carolina Operations.**

15. Carolina Quarries was incorporated in 1992 under Georgia law with a headquarters in Georgia. In 1997, it applied for a certificate of authority with the North Carolina Secretary of State. In or about 2000, as a result of a merger, it became a Delaware corporation, with its headquarters in Concord, New Hampshire. It is now a wholly-owned subsidiary of Rock of Ages.

16. Rock of Ages and Carolina Quarries share common officers and directors. As of 2010, Carolina Quarries' officers included Kurt Swenson, President; Michael Tule, Secretary; and Laura Plude, Treasurer, Vice President of Finance and Chief Financial Officer. Laura Plude has continued to be the CFO for Carolina Quarries through at least 2016. As of 2010, Kurt Swenson was also the Chairman of both Swenson Granite Company LLC and Rock of Ages. As of 2010, Laura Plude was also the Vice President, Chief Financial Officer, Treasurer and Assistant Secretary of Rock of Ages.

17. There are two Carolina Quarries operations in North Carolina. The Rockwell quarry produces white granite, sometimes known in the industry as "Gardenia White." The Salisbury quarry produces pink granite, sometimes known as "Salisbury Pink." The quarries operate year-round.

18. Quarry worker job duties may include operating pneumatic and hydraulic drilling equipment to produce holes up to 30 feet long; operating wire saws to produce vertical and horizontal channels; ensuring that safety procedures are followed in all work areas; handling rigging equipment to assist in the safe and proper extraction of blocks; lubricating quarry equipment and performing repairs; preparing the work area by shoveling and washing; preparing and maintaining production records; and performing other duties as required in a quarry operation and as may be assigned by a supervisor. While performing the duties, the employee may have to climb ladders up to 25 feet tall and lift up to 60 pounds or more. Employees are regularly exposed to outside weather conditions and moving mechanical equipment. They may be occasionally exposed to high places and explosives. Equipment used in the quarry process can include front-end loaders, rock trucks, generators, quarry drills and compressors.

19. Quarry work can involve occupational hazards such as respiratory illness caused by the rock dust. The work can be physically demanding, and potentially dangerous work conditions are involved. Accordingly, normal work activities may include preparatory and safety-related activities, and periodic rest periods are advisable.

20. Mr. Diaz worked for Defendants from approximately September 2012 to April 2016.

21. Mr. Ruiz worked for Defendants from approximately February 2015 to January 2017.

22. Mr. Diaz and Mr. Ruiz were primarily based at the Salisbury or Rockwell quarries.

23. During the time that the Plaintiffs were employed, one of the primary supervisors was Robert "Robbie" Holshouser.

24. During the pertinent times, the Plaintiffs were instructed including by Mr. Holshouser as to when and at what time to arrive at work each day.

25. While the Plaintiffs primarily worked at the Salisbury or Rockwell quarries, from time to time, each was also assigned to work at quarries in other states, including in Virginia, Pennsylvania or New Hampshire.

26. The Virginia quarry is located in Schuyler, Virginia. It produces Alberene soapstone. It is today identified on the Polycor website as the Polycor Virginia quarry, owned and operated by Polycor. On information and belief, Polycor acquired the Virginia quarry some time before when Polycor acquired the Rock of Ages and Swenson operations.

27. The Pennsylvania quarry is located in Elverson, Pennsylvania. It produces American Black granite. Prior to the Polycor merger, it was owned by Rock of Ages through its subsidiary Pennsylvania Granite Corporation. Today, Rock of Ages continues to post help-wanted ads in which it lists the Pennsylvania quarry as one of its quarries. Polycor also lists the quarry on its website as one of its quarries.

28. The New Hampshire quarry is located in Concord, New Hampshire. It produces Concord Grey granite. Prior to the Polycor merger, it was owned by Swenson Granite. Today, Swenson continues to post help-wanted ads in which it lists the New Hampshire quarry as one of its quarries. Polycor also lists the quarry on its website as one of its quarries.

29. During some or all of the pertinent times, Plaintiffs were paid an hourly pay rate while working at the quarry locations. Plaintiffs were required to clock in and out each day. Plaintiffs worked full-time. Overtime was worked often, for example, every other week.

30. As a general practice, the Plaintiffs were not paid for all of their compensable time worked. The improper practices included:

6

31.     **Instructed to come to quarry half an hour early for work-related reasons, told to clock in, yet not paid for the time:** At the North Carolina quarry work locations, Plaintiffs and other employees were generally required to arrive to work by 6:30 a.m. The workers were told to punch in on the timeclock at 6:30. However, the time between 6:30 and 7:00 a.m. was not reflected in their paycheck. The time clock was at first a manually operated punch system and then transitioned to a time clock that would stamp a time card. During the 30 minutes of unpaid time, the workers were required to prepare machinery for the work day, meet as a group to discuss the day's work, and go over task information. This work was required and for the benefit of the employer but was not compensated. The 30 minutes each day of unpaid time if added to their other compensable time, would have given them increased pay and increased overtime pay. The work was an integral part of the principal work activities and was required and not voluntary. *See* 29 C.F.R. §§ 785.24 & 27.

32.     **Work weeks of overtime hours manipulated to only warrant regular pay:** When working at quarry locations outside of North Carolina, Plaintiff's hourly pay rate was manipulated and decreased to avoid pay for overtime. The pay rate was artificially reduced and time and compensation records were manipulated. For example, the work week could span from Monday through Saturday made up of 10-hour days. This meant a 60-hour work week and 120 hours of work for purposes of the two-week pay period. The Plaintiffs would work for two weeks consecutively at a remote location and then return home for a week off. But they were not paid accurately for the 120 hours. Rather, they were paid as if they had worked 40 hours each week for the two weeks at the outside quarry and one week at home. They were paid for three weeks at 40 hours per week instead of two weeks of 60 hours each, to avoid paying overtime. This violated

the FLSA requirement to keep accurate records of "daily and weekly hours worked per pay period," 29 C.F.R. § 825.500(c)(1), resulting in failure to pay overtime.

33. **Failure to pay for travel time to remote locations:** Plaintiffs were provided the use of a company truck when travelling to the remote locations, as distant as New Hampshire. They were not paid for the time spent in transit. The travel time included many hours of driving. The travel time included travel occurring during normal work hours. Plaintiffs should have been paid for this time. *See* 29 C.F.R. § 785.39.

34. **Failure to provide or pay for rest breaks:** Plaintiffs were not given breaks during their work day despite the physically demanding and potentially hazardous work conditions. While the FLSA does not require employers to provide rest breaks, if employers choose to provide rest breaks of up to twenty minutes, the breaks must be paid. On information and belief, under the employer obligations stated in the employee manual, the Plaintiffs were entitled to receive rest breaks. However, they did not, and accordingly did not receive the pay for them either.

35. **Failure to accurately record other time spent traveling:** When traveling between the Salisbury and Rockwell quarries for work purposes, Plaintiffs were required to punch out before they left the one site and punch back in when they got to the other. On information and belief, this practice was directed by the company with the intent of avoiding culpability in the event that an accident occurred while in transit. To the extent that Plaintiffs or others were not paid during this travel time, it was compensable time. This was also a violation of FLSA recordkeeping requirements. *See* 29 C.F.R. §§ 785.37 & 38; US DOL Wage and Hour Division Fact Sheet #53, example No. 4; 29 C.F.R. § 825.500(c)(1).

36. During their employment, other fellow workers were also being subjected to the same employment practices.

8

Case 1:18-cv-00849-WO-JEP    Document 1    Filed 10/05/18    Page 8 of 16

37. Eventually, one of the workers contacted Veronica Parent, the Human Resources Manager at the corporate office in Vermont, in or about February 2018. Ms. Parent identifies herself as the Human Resources Manager who has been employed by Rock of Ages at its office in Barre, Vermont since June 1984. The nature of the underpayments was explained to Ms. Parent. Responding, she said words to the effect of, it was a lot of money, and the company did not want to pay it all back. She indicated she had access to time records.

38. About two weeks after speaking with Ms. Parent, the same worker spoke to Donald Labonte, a top manager. Mr. Labonte said he would look into it and get back to him but the employee was never contacted again by Mr. Labonte.

39. Because of the involvement of the Rock of Ages corporate office in Vermont in accounting, oversight, human resources and payroll, the corporate office knew or should have known of these improper practices. Further, through Ms. Parent and by other means, Rock of Ages is directly involved in managing the quarry locations, managing time entry, determining compensation, and overseeing individuals such as Robbie Holshouser. As a result, Rock of Ages knew or should have known of the failure to properly compensate the workers including the Plaintiffs, and may be held jointly and severally liable with Defendant Carolina Quarries.

40. As a direct and proximate result of the above-described improper practices, the Plaintiffs sustained losses of compensation for numerous hours worked. Further, other similarly-situated workers suffered similar loss of compensation.

## CLASS ACTION ALLEGATIONS

41. Pursuant to LR 23.1, the Plaintiffs respectfully show as follows:

   a. This suit is maintainable as a class action under Federal Rule of Civil Procedure 23(a), (b)(3), and potentially (b)(1) and (2).

b. The size of the class is estimated to be numerous given as it would include all hourly employees at the relevant business operations for a period of several years.

c. The collective of similarly situated employees sought to be certified under 29 U.S.C. § 216(b) is defined as: All current or former workers employed by Defendants from October 5, 2015 to the present.[1]

d. The class of similarly situated employees sought to be certified under Rule 23 for purposes of the claim under NCWHA is defined as: All current or former workers employed by Defendants from October 5, 2016 to the present.[2]

e. The class of similarly situated employees sought to be certified under Rule 23 for purposes of the claim for breach of contract and unjust enrichment is defined as: All current or former workers employed by Defendants from October 5, 2015 to the present.[3]

f. The alleged questions of law or fact claimed to be common to the class include:
   i. Were the Plaintiffs and other employees underpaid?
   ii. Was Defendant Carolina Quarries an employer?
   iii. Was Defendant Rock of Ages an employer or otherwise liable?
   iv. Is Defendant Carolina Quarries liable for underpayments and other damages under statutory or common law?
   v. Is Defendant Rock of Ages liable for the underpayment and other damages under statutory or common law?
   vi. What is the amount of damages to which the Plaintiffs and other employees are entitled?
   vii. Are the Plaintiffs entitled to other damages or relief, or an award of attorneys' fees and costs?

g. Under Rule 23(b)(3), the questions of law or fact common to class members predominate over any questions affecting only individual members, because of the factual similarities across the Plaintiffs and other workers, and the uniform nature of the practices. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy, in that the issues may be commonly resolved, and it should not be necessary to bring a series of separate actions. Plaintiffs are not aware of the existence of any relevant litigation concerning the controversy already begun. There is desirability in concentrating the litigation in this forum, given the locations of the North Carolina quarries and the named Plaintiffs.

---

[1] The FLSA uses a two-year statute of limitations, but for a willful violation, a three-year period applies. 29 U.S.C. § 255(a); *Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 162-63 (4th Cir. 1992).

[2] Claims for unpaid wages and benefits under the NCWHA are subject to a two-year statute of limitations. N.C. Gen. Stat. § 95-25.22(f); *Hamilton v. Memorex Telex Corp.,* 118 N.C. App. 1, 8-9, 454 S.E.2d 278, 282, *disc. review denied*, 340 N.C. 260, 456 S.E.2d 830 (1995).

[3] Claims for breach of contract are subject to a three-year statute of limitations. N.C. Gen. Stat. § 1-52(1).

## FIRST CLAIM FOR RELIEF
## FLSA -- 29 U.S.C. § 201 *et seq.*

42.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

43.     At all relevant times, Defendant Carolina Quarries has been an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203.

44.     Upon information and belief, during the relevant times, Defendant Rock of Ages was sufficiently involved in hiring and firing, supervising and controlling work schedules or conditions of employment, determining rate and methods of payment, maintaining records, and otherwise so as to be an additional "employer" within the meaning of 29 U.S.C. § 203.

45.     Defendants are an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1) and have an annual gross volume of sales or business done of not less than $500,000.

46.     Plaintiffs were employees within the meaning of 29 U.S.C. § 203(e) and did not meet the standards for exemption under 29 U.S.C. § 213.

47.     This claim is brought as a collective action pursuant to 29 U.S.C. § 216(b). Plaintiff's claims arise under 29 U.S.C. § 207(a). Relevant employees covered by the FLSA must receive overtime pay for hours worked over 40 in a workweek at a rate not less than time and one-half their regular rates of pay. 29 U.S.C. § 207(a)(1). An employer may not reduce the employee pay rate in a manner designed to circumvent the provisions (including overtime) of the Act.

48.     Defendants willfully violated the FLSA as follows:

   a. By failing to pay complete wages and overtime compensation based on the facts more specifically alleged above;

   b. By regularly requiring Plaintiffs to work "off the clock" and by failing to compensate them for work performed in excess of 40 hours per week;

   c. By failing to keep accurate time records of wages and hours; and

d. By other practices in violation of the FLSA, 29 U.S.C. § 201 *et seq.*

49. Defendants' actions constitute willful violations within the meaning of 29 U.S.C. § 255(a) in that Defendants acted knowingly or with reckless disregard.

50. Plaintiffs have sustained loss in their compensation as a proximate result of Defendants' FLSA violations. Plaintiffs seek damages in the amount of their unpaid wages and overtime compensation, liquidated damages, attorneys' fees and costs, as provided by 29 U.S.C. § 216(b); and such other legal and equitable relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### NCWHA -- N.C. Gen. Stat. § 95-25.1 *et seq.*

51. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

52. At all relevant times, Defendants were employers of Plaintiffs and similarly situated individuals within the meaning of N.C. Gen. Stat. § 95-25.2(5).

53. At all relevant times, each Plaintiff was an employee within the meaning of N.C. Gen. Stat. § 95-25.2(4).

54. It is unlawful under North Carolina law for an employer to require or permit an employee to work without paying compensation for all hours worked. Pursuant to N.C. Gen. Stat. § 95-25.4, employers are generally required to pay overtime compensation at an hourly rate of 1.5 times an employee's regular rate of pay for hours worked over 40 in a work week.

55. The employment positions held by the Plaintiffs during some or all of the pertinent times did not meet the standards for exemption under N.C. Gen. Stat. § 95-25.14.

56. Defendant, through their policies and practices described above, willfully violated the NCWHA as follows:

a. By failing to pay the Plaintiffs their earned wages for all hours worked, in violation of N.C. Gen. Stat. § 95-25.6;

b. By failing to pay the Plaintiffs overtime pay, in violation of N.C. Gen. Stat. § 95-25.4;

c. By failing to keep accurate time records with respect to the Plaintiffs in a manner sufficient to determine their wages and hours in violation of N.C. Gen. Stat. § 95-25.15;

d. By failing to provide lawful notice to the Plaintiffs of its policies and practices or any change in its policies and practices concerning compensation in violation of N.C. Gen. Stat. § 95-25.13;

e. By other practices in violation of the NCWHA, N.C. Gen. Stat. § 95-25.1 *et. seq.*

57. Defendant's actions, described above, constitute continuing willful violations, nor did the acts or omissions constituting the violation occur in good faith with reasonable grounds for believing that the act or omission was not a violation. N.C. Gen. Stat. § 95-25.22(a1).

58. Plaintiffs have sustained losses in compensation as a proximate result of Defendant's violations of the NCWHA. Accordingly, Plaintiffs seek damages in the amount of their unpaid earned compensation, plus liquidated damages, and recovery of their attorneys' fees and costs, as provided by N.C. Gen. Stat. § 95-25.22.

### THIRD CLAIM FOR RELIEF
### Breach of Contract

59. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

60. Under the facts and circumstances, the employment agreement between the Plaintiffs and the Defendants included a commitment by the employer to provide the Plaintiffs with rest breaks during the work day. Indeed, given the strenuous and potentially dangerous nature of the labor, rest breaks were warranted.

13

Case 1:18-cv-00849-WO-JEP   Document 1   Filed 10/05/18   Page 13 of 16

61. During the pertinent times, the Defendants breached their contract with the Plaintiffs and others similarly situated, by not providing the rest breaks, and so, by not providing the required compensation for those rest breaks.

62. Under the FLSA, when an employer agrees to provide rest breaks, those are compensable periods of time.

63. Due to Defendants' breach of contract, the Plaintiffs and class members have been damaged. As a direct and proximate result of the Defendants' breach of contract, the Plaintiffs are entitled to an award of compensatory damages in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### Unjust Enrichment, Restitution

64. Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

65. Under the facts and circumstances, and in the alternative to the causes of action pled above, the Plaintiffs conferred a benefit upon the Defendants, specifically included but not limited to their unpaid periods of work by arriving at work at Defendant's instruction half an hour early; unpaid time spent in travel to out-of-town and remote locations; and other benefits conferred as the evidence may show.

66. Defendants knew of the benefits conferred, received said benefits and the value of the time and labor provided by the Plaintiffs. It is equitable to require restitution and disgorgement and payment under a contract implied at law for the benefit conferred.

67. The Plaintiffs and similarly situated class members are entitled to be compensated for the reasonable value of their services and benefits they have conferred on the Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief and pray for judgment as follows:

a. Permitting this case to proceed as a collective action under § 216(b) of the FLSA with notice to the putative plaintiffs to ensure their claims are not lost to the FLSA statute of limitations;

b. Judgment that Plaintiffs and those similarly situated are entitled to the overtime and compensation protections under the FLSA and NCWHA;

c. Judgment against Defendants for violation of the overtime and compensation provisions of the FLSA and NCWHA and common law claims;

d. Judgment that Defendants' violations of the FLSA and NCWHA were willful;

e. An Order certifying a class action under the NCWHA and common law claims and designating the above Plaintiffs as representatives on behalf of all similarly situated workers and their counsel as class counsel;

f. An award to Plaintiffs and those similarly situated in the amount of unpaid overtime and other compensation and wages;

g. Leave to add additional plaintiffs or claims by motion, the filing of written consent forms, or any other method approved by the Court;

h. Liquidated damages pursuant to the FLSA, 29 U.S.C. § 216(b) and the NCWHA, N.C. Gen. Stat. § 95-25.22(a1);

i. Costs and reasonable attorneys' fees pursuant to FLSA, 29 U.S.C. § 216, and NCWHA, N.C. Gen. Stat. § 95-25.22, and pre-judgement and post-judgement interest, as provided by law; and

j. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues presented herein.

This the 5th day of October, 2018.

                              WALLACE & GRAHAM, P.A.

                              <u>s/John Hughes</u>
                              Mona Lisa Wallace
                              NC State Bar # 009201
                              Kayleigh Lynn Messersmith
                              NC State Bar # 51873
                              John Hughes
                              NC State Bar # 22126
                              Wallace & Graham, PA
                              525 N. Main Street
                              Salisbury, North Carolina 28144
                              Telephone: (704) 633-5244
                              Facsimile:  (704) 633-9434
                              mwallace@wallacegraham.com
                              kmessersmith@wallacegraham.com
                              jhughes@wallacegraham.com

16

Case 1:18-cv-00849-WO-JEP    Document 1    Filed 10/05/18    Page 16 of 16